Harrison, Ch. J.
delivered the opinion of the Court. In this case certain questions have been argued and the Court proceed to give their opinion thereon.
1. What estate William Blackman acquired under the deed from Greenfield and Jozules f
Answer. An absolute fee-simple in the whole of two tracts of land called Callicome and “ Jowles’s Calf Pasture,” except such part thereof as lay within the lines of the tract called “ Holbridge.” In this he acquired a. defeasible estate, liable to be destroyed by Davie or any assignee of his, besides Greenfield and Jowles chaining a patent for it.
2. Whether John Davie had not the equitable interest in the tract of land called Holbridge, when Greenfield and J ovules executed their deed to William Black-man ?
Answer. From the facts, he had. the equitable interest.
3. Whether Davie’s bond, endorsed upon the deed from Greenfield and J ovules to William Blackman, did not ope-. *136 rate as a release, and transfer all Davie's right in the tract of land called uHolbridge," for which he had obtained a certificate so far as it lay within the tracts of land called “ Callicome" and “ Jowles's Calj Pasture P"
Answer. This point cannot be determined, for want of a fact being stated. A bond, like the one given by Davie', may operate as a release, and transfer an equitable interest. And if there existed nothing more in the case, Davie's bond might well be considered to have transferred all the interest he had in the tract called “ Holbridge f lying within the lines of “ Callicome" and u Calf Pastured' But it appearing by the state of the case, that Davie, on the same day that he executed the bond to Bhckman, executed one to Greenfield and Jowles, for releasing “ all his right, title and interest, in “ a certain tract of land called “ Holbridge," contain- “ ing 260 acres,” we cannot say that Davie's bond to Blackman transferred all his equitable interest, because it is not stated, that its execution was prior to that of the other bond.
4. Could Greenfield and Jowles, by procuring an assignment of the certificate from John Davie of “ Holbridge u Town," and a patent upon the same, defeat and avoid their deed to William Blackman, for such part of “ Hoi- “ bridge Town" as lies within “ Callicome" and “ Calf “ Pasture," supposing he were living, against their warranty ?
Answer. We are of opinion that they could not! their deed with warranty would always have protected Blackman and his heirs, and any assignee by actual purchase or assignment, against any claim which they or any claiming under them could set up. And the relation of the patent, obtained on the assignment of the certificate from Davie, could never have been carried quo ad Black-man, his heirs and actual assigns, beyond the date of their deed to • him.
*137 3. Would not the proprietor, upon the death of WilHam Blackman, without heirs and dying intestate, stand in the place of William Blackman, and in consequence estoppel and warranty under the deed from Greenfield and fowles to Blackman, that Blackman himself would have been entitled to, had the action been between Black-man and them ? of his right in escheat be entitled to all the benefits of
Answer. We are of opinion, under the circumstances of this case, that the proprietor could not take advantage of the warranty: because his right in escheat is by a title paramount, and an implied condition annexed to his grant. That he is in in the post, and he could net be considered, upon any ground of fair reasoning or construction, an assignee within the contemplation of the parties, or the expressions of the deed.
6. And if the proprietor would have been entitled to the same advantages under the deed, that William Black-man himself would have been entitled to, is not his patentee, John Kelly, under the escheat warrant, for want of heirs of Blackman, entitled to the same benefit ?
Answer. The proprietor not being entitled to the same benefits under the deed from Greenfield aud Jowles to Blackman, that Blackman himself would have been entitled to, of consequence his patentee could not be entitled to the same. But it is not a sound or a legal principle, that a patentee can take or have all the rights which the proprietor might be entitled to, even where it is clear, that an indefeasible title by escheat had fallen. He cannot take, by assignment, a right of entry, especially while the possession is full.
7. Had the proprietor the same rights with respect to Maryland, that the king of Great Britain had in England, in consequence of the fifth section in the charter to him by the king, from his being lord of the fee ?
*138 . ¿{newer. We are clearly of opinion he had not. His rights were derived under the charter ; the 4th section of which grants to him “ all and singular such ample fights, jurisdictions, &c. as any Bishop of Durham within the hishopric or county palatine of Durham had.” The law writers upon the subject of the palatinate ,rights, A. 60. Davie, Blackstone, &c. ip enumerating the rights, have never .placed them upon a footing with the Court? of the king» and the maxim, ‘f nullum tempus occwrit r.egi,” has never been applied, that we cap find, to any but the king himself. And it is. a prerogative maxim, which if mu?t have ceased to have heen whenever it became applicable to any subject. Ip the hands of the crovm.it is an inconvenient one, but being placed there, jt is still permitted to continue j but even there it has been greatly restrained by the act of 9 Geo. III. c. —.. It neyer was in the proprietor, because never in the Bishop of Durham-, apd there could have beep po very good pretext for the judges to adopt it here, because he never busied himself extremely in the affairs of Maryland, which was the ground of its being at first established in the case of the king ; ,i. e. his constant attention to the public weal and the public concerns, to the neglect of his private affairs. Besides, it is an unjust, injurious and inconvenient rule, with respect to the citizens, and as such not being expressly given, it ought pot to be permitted to operate,
8. Whether would the acceptance of the rent by the proprietor or his- officers, from Greenfield and fatales and their heirs, supposing him entitled to the land? which Blackman had as an escheat, bar him of his right in escheat?-
Answer. We are of opinion, that even if a right of escheat had ever, fallen, that the acceptance of rent? as, stated in the . case, would have barred the proprietor ;. his title by escheat was a tifie in pais, and no.t of record. *139 The king’s title by escheat is a title in pais, and the proprietor’s title could only be completed by his entering into the land, or bringing a writ of escheat after the title by escheat fallen. For having once parted with the fee by a formal and solemn grant, he had nothing left in him but an interest in possibility. In reverter depending on the remote contingency of the patentee, or any assignee under him or his assignees in futurum, dying without heirs, and, therefore, till re-entry or bringing a writ of escheat, and a recovery, the estate is not revested in him ; and as the estate was to be revested in him by a matter in pais, “ an entry,” it might be continued out of him by matter in pais, viz. acceptance of rent; and in this way-are all the authorities to be understood.
10. Whether the proprietor could be disseised Or barred of his title in escheat by the possession which Greenfield and fowles had, their dying seised, and the descents to their heirs ?
Answer. We are of opinion, that if ever he had a right in escheat, the descent would have barred him had he been a party in the present action ; ex consequenti his patentee. His right was in pais, and might be defeated by matter in pais; and upon the distinction of his right, being in pais, and of its being upon record, all the authorities are to be reconciled. Further the proprietor could not grant, even if he had a right in escheat, before he entered, nor a right of entry cannot be assigned ; and any patent issued by him before he had revested the estate by entry, was void, especially where the possession was filled.
11. Whether a patent can be vacated in a Court of Law ?

Answer. [No opinion appears to have been given on this question.]

Authorities. 3d point. 1 Raym. 420. 690. Carth. 63, 64. — 4th point. 3 Co. 28. Butler and Baker’s case. — 5th *140 point. 1 Co. 1. 122. Co. Litt. 385. 4 Bac. Abr. 154. 156. F. R. B. 338. 1 Bl. Rep. 147. 179. — 6th point. Vid. Popham, 26. 4 Bac. Abr. 196, 197. 4 Co. 58. 9 Co. gg — 8th point. Vid. 2 Bl. Com. 245. 4 Co. 55. F. N. B. 340. Co. Litt. 268. 352. a. 45. 2 Lill. 197. 1 Bac. Abr. 302, 303. 1 Lill. 123. 3 Co. 24.
Judgments were entered in each case for the defendants.
Hanson, J.
who sat at the argument and decision of these cases, did, in May, 1801, whilst Chancellor, file in the office of the General Court the following protest against the preceding opinion, delivered by the Chief Judge, and which protest he directed to be entered on record.
John Kelly’s Lessee "1 In the General Court for v. > the Western Shore, October Greenfield and Sothoron.J term, 1785.
In this case, it appears that judgment was entered for the plaintiff, subject to the opinion of the Court, on a statement of facts, or point saved.
The cause was, by the counsel on each side, fully and ably debated, and an opinion was delivered by Harrison, Chief Judge, in favour of the defendants.
The subscriber has been informed, that every article in that opinion has been considered by the bar, and the present judges of the General Court, as the sentiment not only of the Chief Judge, but of each of his associates, Hanson and Goldsboroagh. The subscriber therefore thinks proper to state what passed between the Judges, with respect to their judgment in that cause.
As the cause came before the Court on a statement of facts, every point made by the counsel, was debated, before the Court gave any opinion whatever.
*141 The argument being ended, a conference (as was usual) took place between the Chief J udge and the subscriber. The latter, with little hesitation, declared, that in his opinion the cause might be decided on a single point, viz. that as the title to the land in question was in the proprietary, at the time of his grant to the persons under whom the defendants claim j and as that grant remains unrepealed by the Chancery Court, it must prevail against the younger grant obtained by the piaintiif, and issued on a younger survey and warrant. The subscriber observed, that under this impression he was for giving judgment in the defendants’ favour; that there was no necessity for deciding on the points raised by the counsel; that it had always been, and perhaps would ever be, Ms practice, after giving his opinion on a point which put an end to the cause, to give no further opinion ; and that such practice had uniformly prevailed in the Court, since the said Chief Justice had presided. He then assigned his reasons, which to him appeared conclusive for continuing the practice.
The Chief Judge, not acquiescing in the remarks of his colleague, applied, in his presence, to Judge Golds-borough. A debate ensued, and the result was, that Judge Goldsborough avowed a perfect coincidence in sentiment with Judge Hanson. But inasmuch as all three were in favour of the defendants, it was agreed that the Chief Judge should deliver the opinion of the Court.
The subscriber declares, that, to the best of his recollection and belief, neither Judge Goldsborough, nor himself, at that time, intimated to the Chief Judge any opinion in this cause, except that which has already been stated, viz. that a grant by the proprietary, in whom the title was at the time of the grant, shall, so long as it remains unvacated or unrepealed by the Chancery Court, prevail against any subsequent grant, made to another person, whose survey and location are younger than the *142 certificate, on which the said first grant had issued; that is to say, if a patent has issued from the land-office, un¿er Sllch circumstances as, agreeably to the rules and practice of the office, required a warrant and proceedings, different from those which have been used on the occasion, no other grant, obtained on any warrant, after-wards issued, or on a survey, or location, afterwards made, shall prevail against the said patent; and that no advantage shall be taken on a trial at law, by the younger patentee of the' want of formality, or regularity, in obtaining the firát grant, or of imposition on the proprietary or other person, but that the said first grant shall stand, as any other grant, so long as it remains unvacated or unrepealed, by the Chancery Court. This doc* trine appeared to the two associate Judges to be per* fectly clear, and. the Chief Judge did not controvert it.
- The Chief Judge, notwithstanding what had passed, about three weeks afterwards, delivered a long and learned opinion in writing, in which, it appears, eleven points, mad’e by the counsel, or deduced from their arguments, are- decided. The subscriber remembers Well, that, as the opinioñ, from the language, appeared to be the unanimous opinion of the Court, on many, if not on all the points therein discussed, he contemplated at the moment, a disavowal of his own concurrence, but for certain reasons, which perhaps ought not to have governed, he declined it.
He now perceives cleai-ly, that he and Judge Golds-borough did wrong in not apprizing the bar, that the writing, aforesaid contained the opinions of the Chief Judge only; and that they neither concurred with, nor dissented from', the said opinions. All that he can now do with propriety, in order to place matters on then-proper footing, (and he earnestly hopes it is not too late,) is, in addition- to what he has already said, to protest ■that neither he, nor (to the best of his recollection and *143 belief) Judge Goldsborough, at any time, has concurred in the decisions of Judge Harrison in this cause, further than is already stated ; and that if the subscriber had conceived himself under an obligation of delivering his opinion on each of the eleven points stated in the aforesaid writing, he should not, on every point, have concurred with the Chief Judge. On some of the points, indeed, he did not even give himself the trouble of forming an opinion.
He did not even consider as involved in his point, the question how far the royal rights, or prerogative, of the lord proprietary of Maryland extended : for he was under the impression, that a person in England, seised of land under a grant of the crown, passed many years ago, and still remaining unvacated or unrepealed, could not have a recovery against him, by a person claiming under a new grant.
The object of this narrative and declaration is merely to have it understood, as it ought unquestionably to have been from the beginning, that, although the decisions contained in the writing aforesaid, may be strictly conformable to law, they are entitled to no further authority than belongs to the name of Judge Harrison only. It is not the meaning of the subscriber to controvert any one of those decisions : But he has been applied to, to settle, so far as his declaration can settle, a dispute at the bar concerning the writing aforesaid; and he conceives it his duty to do that, which is in the power of no other man, to take care, that decisions in which he did not concur, shall not be quoted as his deliberate opinions, delivered by the mouth of the Chief Judge. He is well apprized of the distinguished reputation, which that excellent man had deservedly acquired •, and it is probable, that the subscriber’s opinion might be considered as affording but a slender support to that of Judge Harrison. But be this as it may, it can never be insisted that the *144 opinion of Judge Harrison alone, on points of importanee, should be suffered to pass as the opinion of Harrison, Hanson and Goldsborough.
A. C. HANSON, Chancellor.
N. B. It may not be amiss to explain more fully the meaning of Judge Hanson’s point. There is no doubt, that if a private man conveys land, in which he has a clear, pomplete title, to A., who enters, and is seised $ and the said private man afterwards conveys the same land to B., the said B. is not thereby enabled tó recover the land from A. There is no difference between two deeds for the same land from a private person, and two patents from the king. In either case, it is the Court of Chancery alone which can enable any person to recover from the first grantee or patentee. In this view of things it is clear, that there was no necessity for deciding the several points raised by the counsel ; nor can'Judge Hanson’s point be considered as a virtual or implied decision of any point which he has not stated.
A. C. HANSON,- Chancellor.
With some hesitation Judge Hanson adds his decided opinion, that the proprietary could never be considered in a worse state than a private man. If the act of limitations was to operate against him, as against a private man, he must surely have been entitled to the benefit of the exceptions, made by the act in favour of a private man. It would be monstrous to say, first, that with respect to limitation of time, the proprietary was not exempt more than a private man from the operation of the act, and to say next, that notwithstanding the proprietary’s real absence from his province, he must be supposed always present in his province. Would it not be more reasonable to Say, that, as he was supposed always occupied by the affairs of his province, and there *145 fore not having it in his power to attend his private affairs, like a common man, the act of limitations ought not to-operate against him at alii Judge Hanson had always understood it to be settled, that, until some grant had been issued from the proprietary, mere adverse possession, of whatever duration, could not bar his entry. If that point was settled on proper grounds, why, in the name of common sense and justice, should an adverse possession of twenty years have barred the proprietary from his entry on lands theretofore patented, which had escheated to him ?
This is one of the great points, on which, if Judge Hanson had conceived himself obliged to decide in the cause of Kelly and Greenfield, he must have dissented. from the Chief Judge’s opinion. '
A. C. HANSON.
May 28, 1801.